**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNDER A FOOT PLANT, CO.,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. BPG-15-871** |
| **EXTERIOR DESIGN, INC.,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MOTION TO STRIKE DEFENDANT'S REBUTTAL EXPERT REPORTS**
**AND DISQUALIFY DEFENDANT'S REBUTTAL EXPERTS**

Pursuant to Federal Rules of Civil Procedure 26(a)(2) and (g), Federal Rule of Evidence 702, and Local Rules, Appendix A, Guideline 1(f), Plaintiff Under A Foot Plant, Co. ("UAF") hereby files this Motion to Strike Defendant Exterior Design, Inc.'s ("ED") Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts, and states:

**BACKGROUND**

On October 25, 2016, this Court entered an Order [Doc. 69] (the "Experts Scheduling Order") adopting the schedule for expert discovery proposed in the October 18, 2016 Joint Status Report [Doc. 68]. The Parties negotiated the proposed schedule for expert discovery between October 4, 2016 and October 13, 2016. *See* Email Exchange between Charles Arcodia to Jan I. Berlage, attached as <u>Exhibit 1</u>.  The Court's Experts Scheduling Order confirmed that Expert Reports were due on December 15, 2016 and that Rebuttal Reports were due on January 30, 2017.

On December 8, 2015, almost a year prior to the entry of the Experts Scheduling Order, Plaintiff designated Professor Jeff Sedlik as its damages expert. In accordance with the Experts Scheduling Order, Plaintiff sent Prof. Sedlik's expert report and exhibits to Defendant on December 15, 2016.  Plaintiff then sent corrected exhibits to Defendant on December 16, 2016.

Defendant did not transmit any expert reports or designations to Plaintiff on or before the December 15, 2016 deadline, leaving itself only the opportunity to submit a rebuttal report responsive to Professor Sedlik's expert report.

In a letter dated January 28, 2017, Defendant simultaneously designated Robert Lionel Lovejoy Jr. as an expert witness and transmitted expert reports for Mr. Lovejoy and Edward Cammer.[1]  Subsequently, in a letter dated January 30, 2017, Defendant transmitted an expert report for Tim Strasdauskas.[2]   The expert reports submitted by Defendant each contain three fatal deficiencies.  First, none of the reports reference and/or rebut Prof. Sedlik's opinions.  Thus, they are not rebuttal reports, but untimely expert reports.   Second, none of the reports meet the disclosure requirements for expert reports.  Third, none of the reports are valid expert reports under the Federal Rules of Evidence.

On February 1, 2017, pursuant to this Court's guidance on discovery objections in Local Rules, Appendix A, Guideline 1(f), Plaintiff sent a letter to Defendant's counsel identifying the procedural and substantive failures Defendant's expert reports.  Letter from Jan I. Berlage to Charles A. Arcodia (Feb. 1, 2017), attached as <u>Exhibit 2</u>.  The next morning, Defendant's counsel sent a responsive letter contending that the "Plaintiff's experts (*sic*) reports would be due December 15, 2016 and then defense expert reports in rebuttal to the same would be due January 30, 1017 (*sic*)."  Letter from Charles A. Arcodia to Jan I. Berlage and Michael Dell Long (Feb. 2, 2017), attached as <u>Exhibit 3</u>.  Rather than withdraw or even attempt to supplement the reports, Defendant's counsel took the position that his experts' reports were "succinct" and that his

---

[1] Mr. Cammer was never formally designated as an expert witness.

[2] Mr. Strasdauskas was never formally designated as an expert witness.

responsive letter dealt with the deficiencies raised in our February 1, 2017 letter.  His letter did not; hence this motion.

## ARGUMENT

**1.     The Reports of Messrs. Cammer, Lovejoy, and Strasdauskas Should Be Stricken For Procedural Failures.**

All three of Defendant's expert reports suffer from procedural failures that justify this Court striking them.  Defendant violated this Court's Experts Scheduling Order by submitting non-rebuttal expert reports after December 15, 2016.  Moreover, even after a reasonable opportunity to withdraw or supplement the reports, Defendant has not produced a single complete expert report. All three of the reports should be stricken for the reasons specified below.

### A.     *None of Defendant's Expert Reports are 'Rebuttal Reports,' So They Are Untimely.*

The reports of Messrs Cammer, Lovejoy, and Strasdauskas do not rebut any of the opinions expressed in Prof. Sedlik's Expert Report. In fact, none of the three reports even refer to or mention Prof. Sedlik's Expert Report. Thus, these three reports are Defendant's "Expert Reports" within the meaning of this Court's Experts Scheduling Order [Doc. 69], which were due on or before December 15, 2016. Defendant's counsel demonstrated his contemporaneous understanding that Defendant's non-rebuttal reports were due on December 15, 2016.  *See* Ex. 1.  All three reports, therefore, are untimely and should be stricken.

An expert report is a Rebuttal Report "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)."  Fed. R. Civ. P. 26(a)(2)(D)(ii) [hereinafter FRCP]; *City of Gary v. Shafer*, No. 2:07-CV-56-PRC, 2009 WL 1370997, at *3 (N.D. Ind. May 13, 2009) ("In order for a Rebuttal Expert Report to be admissible under Rule 26, it must 'contradict or rebut evidence on the same subject matter' identified by [previous] expert reports."); *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc.*

*Profit Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013)

("Under Rule 26(a)(2)(D)(ii), an expert report qualifies as a rebuttal report if . . .").

 In evaluating whether an untimely expert report should be stricken, this Court considers

five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the
> ability of that party to cure the surprise; (3) the extent to which allowing the
> evidence would disrupt the trial; (4) the importance of the evidence; and (5) the
> non-disclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack and Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

"The party who fails to timely disclose her expert or expert report bears the burden to 'demonstrate

substantial justification for her failure to comply.'" *Khosmukhamedov v. Potomac Elec. Power

Co.*, No. CIV.A. AW-11-449, 2012 WL 1670152, at *2 (D. Md. May 11, 2012) (quoting *Carr v.

Deeds*, 453 F.3d 593, 604–05 (4th Cir. 2006)).  Supplementation of an expert report does not cure

its tardiness:

> Federal Rule of Civil Procedure 26(e) requires that a Rule 26(a)(2) disclosure be
> supplemented in a timely manner if the party making the disclosure learns that in
> some material respect the disclosure or response is incomplete.  This required
> supplementation, however, does not create a right to produce information in a
> belated fashion.  To construe supplementation to apply whenever a party wants to
> bolster or submit additional expert opinions would wreak havoc on docket control
> and amount to unlimited expert opinion preparation.

*CSX Transportation*, 2016 WL 5390809, at *2 (citations and internal marks omitted).

 None of Defendant's three reports refers to or rebuts an opinion of Prof. Sedlik, but instead

offers their personal opinions about the evidence and/or issues in this case, none of which were

raised in Prof. Sedlik's report. *See* Report of Jeff Sedlik, attached as <u>Exhibit 7</u>.  For example,

Mr. Cammer offered his personal opinions on whether "pictures are easily modified," whether

there are "discrepancies in the numbering and metadata," whether the images at issue in this case

resemble "taking a picture of your lawn," whether the pictures were "taken illegally," and whether

the pictures are correctly time-stamped.  Report of Edward Cammer, attached as <u>Exhibit 8</u>.
Mr. Lovejoy explained how much his company usually pays for photographs of plants. Report of
Robert Lionel Lovejoy Jr., attached as <u>Exhibit 9</u>.  Mr. Strasdauskas provided his evaluation of the
"net economic benefit to [Defendant] Exterior Design, Inc." from its infringement. Report of Tim
Strasdauskas, attached as <u>Exhibit 10</u>.  The Court's Memorandum Opinion of September 1, 2016
held that Plaintiff owns a valid copyright in 21 of the images at issue in this case, Memorandum
Opinion, at 9 (Sep. 1, 2016) [Doc. 65], obviating the need for Prof. Sedlik to conduct an
independent analysis for inclusion in his expert report.  Further, Prof. Sedlik's expert report did
not refer to or offer an opinion as to HIP Labels's licensing history, nor express an opinion on
Defendant's economic benefit.

Defendant's counsel had abundant notice that there were differing deadlines for expert
reports and rebuttal reports.  The Experts Scheduling Order did not separate or differentiate
between the due dates for Plaintiff's expert reports and Defendant's expert reports, but adopted the
Parties' joint agreement that all expert reports were due on December 15, 2016 and all rebuttal
reports were due on January 30, 2017. Defendant's counsel even demonstrated his
contemporaneous understanding of the differing deadlines in his email responses. *See* <u>Ex. 1</u> at 1-3.
If Defendant wished to file its own independent, non-rebuttal expert opinions, the appropriate time
was December 15, 2016, so that Plaintiff would have a reasonable time to respond by the January
30, 2017 deadline.

Instead, Defendant has attempted to submit expert reports 44-46 days late without
(1) requesting an extension from Plaintiff or this Court or (2) any articulated justification.  Indeed,
Defendant only designates one of the three reports as "offered in rebuttal to the December 2016
report of your expert Prof. Sedlik," and then only in his transmittal letter to Plaintiff's counsel.

*Compare* Letter from Charles A. Arcodia dated Jan. 28, 2017, attached as Exhibit 4 ("Please be advised that the Defendants supplement their answers to discovery in this matter to add Robert Lovejoy as an expert in this matter.  Mr. Lovejoy's testimony will be offered in rebuttal to the December 2016 report of your expert Prof. Sedlik.") *with* Letter from Charles A. Arcodia dated Jan. 28, 2017, attached as Exhibit 5 ("Enclosed find the Defense expert reports of Robert Lovejoy and Edward Cammer") *and* Letter from Charles A. Arcodia dated Jan. 30, 2017, attached as Exhibit 6 ("Enclosed find the Defense expert report of Tim Strasdauskas").  Despite explicit reference to the non-rebuttal nature of the reports in Plaintiff's February 1, 2017 letter, Ex. 2 at 2-3, Defendant's counsel has provided no response on this point.  *See generally* Ex. 3.

In each report, Defendant "provided an expert opinion in the guise of a rebuttal report but designed to support [a] proposed new theory of liability" or other novel opinions.  *Al Jazeera Media Network v. Dow Lohnes PLLC*, No. CV DKC 13-2769, 2015 WL 8316102, at *2 (D. Md. Dec. 9, 2015).  The reports proffered by Defendant do not rebut the expert report of Prof. Sedlik.  Instead, they are late-submitted expert reports which deprive Plaintiff of (1) the ability to rebut the reports and (2) the ability to adequately prepare for cross-examination, including consultation with appropriate experts.  Defendant has failed to provide any explanation for its failure to disclose the evidence.  Defendant's reports do not rebut the report of Prof. Sedlik.  Accordingly, this Court should strike the reports.

### B.   *Defendant's Expert Reports Are Incomplete.*

Under both the express language of FRCP 26(a)(2) and the doctrine of this Court, the reports of Messrs. Cammer, Lovejoy, and Strasdauskas are incomplete.  The incompleteness of these reports prejudices Plaintiff by denying it a reasonable opportunity to interrogate the findings of Defendant's purported experts prior to deposition.  Defendant's late expert report submissions

exacerbated Defendant's failure to produce the expert reports in a timely manner, making the incompleteness impossible to cure.  The reports should be stricken.

FRCP 26(a)(2)(B) provides that expert disclosures:

> must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:
>
> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii)   the facts or data considered by the witness in forming them;
> (iii)  any exhibits that will be used to summarize or support them;
> (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Additionally, "a report is complete, and compliant with Rule 26(a)(2), if it is sufficiently detailed such that 'surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.'" *Montgomery v. CSX Transportation*, No. SAG-14-1520, 2016 WL 5390809, at *2 (D. Md. Sept. 27, 2016) (quoting *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503 (D. Md. 1997)) (internal marks omitted).

Each of Defendant's reports omits mandatory content.  Mr. Cammer's report, Ex. 8, attempts to avoid the requirement that it include "a complete statement of all opinions," FRCP 26(a)(2)(B)(i), by instead referencing "many inconsistencies" and "discrepancies" and leaving open the possibility that he will enumerate these discrepancies at some later date.[3] Mr. Cammer's report does not include a significant portion of the "facts or data considered," FRCP 26(a)(2)(B)(ii), but instead refers to "discrepancies in the numbering and metadata" without any

---

[3] "This is just one of the many inconsistencies noted in review of all the information."  Ex. 8.

summary or review of data or evidence.  Mr. Cammer's failure to identify the "discrepancies" or "inconsistencies" to which he refers demonstrates the non-expert nature of his report.  His report does not contain "exhibits," a "list of publications," a "list of all other cases" in which he has testified, or a "statement of the compensation to be paid."  FRCP 26(a)(2)(B)(iii)-(vi).  His report also was not "signed by the witness."  FRCP 26(a)(2)(B).

The omissions in Mr. Cammer's report are particularly troubling, because the Microsoft Word version of Mr. Cammer's report that was transmitted to Plaintiff lists the file's author as "Ed Kiley," Defendant's director of sales and marketing.  *See* Document Properties Report for EdCammer.docx, attached as Exhibit 11.  For that reason, the statement from Defendant's counsel that "none of the experts have trial experience [and] none have been paid by the Defendant for their opinions," Ex. 3, does not remedy Mr. Cammer's failure to independently state his experience or compensation.  This fact also increases the importance of Mr. Cammer signing his report and subsequently verifying its contents.[4]

Mr. Lovejoy's report, Ex. 9, suffers from many of the same deficiencies as Mr. Cammer's.  Mr. Lovejoy's report contains no opinions, just a list of facts about his business.  It does not contain "exhibits," a "list of publications," a "list of all other cases" in which he has testified, or a "statement of the compensation to be paid."  FRCP 26(a)(2)(B)(iii)-(vi).  The report also was not "signed by the witness."  FRCP 26(a)(2)(B).

Mr. Strasdauskas's report, Ex. 10, though somewhat more complete, is also missing several mandatory elements.  His report does not contain "exhibits," a "list of publications," or a "list of all other cases" in which he has testified.  Not only is Mr. Strasdauskas's report not signed, FRCP 26(a)(2)(B), but it does not bear his name anywhere in the document.  His report also relies

---

[4] Defendant's counsel was notified about the discrepancy in authorship, Ex. 2 at 3 n.1.

on several documents and other data that are not attached or disclosed, FRCP 26(a)(2)(B)(ii), offering instead to provide the basis for his calculations "upon request." Ex. 10 at 2. Those calculations have already been requested by email dated January 31, 2017 and have not been provided to date.

In addition to omitting items identified in the Rule, none of the reports are sufficiently detailed such that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced. Each report contains half-a-page or less of allegedly expert opinion. Mr. Cammer identifies "inconsistencies" and "discrepancies" which he does not articulate, such that any deposition of Mr. Cammer would venture into topics not expressly covered in his report or which have been previously ruled on by the Court. *See* Ex. 8; Memorandum Opinion, at 9 (Sep. 1, 2016) [Doc. 65]. Mr. Lovejoy offers no conclusions at all, such that any deposition discussing his valuation of the images at issue in this litigation would be based on undisclosed methods or opinions. Ex. 9. Despite being transmitted on the Rebuttal Report deadline, Mr. Strasdauskas's report intentionally omits "documentation of the above referenced calculations," offering only to provide them "upon request." Ex. 10 at 2. Neither Mr. Strasdauskas nor Defendant offer any reason why Plaintiff should be denied time to review Mr. Strasdauskas's calculations prior to the deposition deadline. Defendant's counsel practically concedes that the reports force unnecessary depositions: "The reports are succinct. Please advise if you wish to depose any of the witnesses." Ex. 3 at 1. In sum, none of the reports prepare Plaintiff to depose the experts and risk exceedingly wasteful deposition time and expense.

Defendant's reports are incomplete under both the express requirements of FRCP 26(a)(2) and the law of this Court. Neither subsequent amendments nor communication among counsel have solved these deficiencies. Accordingly, this Court should strike all of the reports.

**2.      None of Defendant's Expert Reports Are Expert Testimony Under Fed. R. Evid. 702 and the Reports Should Be Excluded.**

Rule 702 of the Federal Rules of Evidence ("FRE") governs the testimony of expert witnesses.  As the United States Court of Appeals for the Fourth Circuit reaffirmed earlier this month, "Rule 702 imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable."  *Nease v. Ford Motor Co.*, No. 15-1950, 2017 WL 437665, at *7 (4th Cir. Feb. 1, 2017).  Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 reflects the policy announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, which "charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony."  FRE 702 advisory committee's note; *Nease*, 2017 WL 437554, at *6.  The party seeking to introduce expert testimony has the burden of establishing its admissibility by a preponderance of the evidence.  *Equal Rights Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *16 (D. Md. Mar. 31, 2016).  None of Defendant's reports meet this standard.

**A.      *The Report and Opinion of Mr. Cammer Should Be Excluded Because They Are Outside the Scope of His Expertise.***

Edward Cammer designates himself as an I.T. professional "with thirty years progressive experience in operating systems, hardware and data processing." Ex. 8.  Mr. Cammer specializes in core I.T. tasks, including "operating systems," "networking," and computer "hardware." *Id*.  Notably, Mr. Cammer's experience does not include photography, digital photography, imaging

software, image manipulation, photograph pricing, botany, copyright, or any similar field. Nevertheless, Mr. Cammer opines exclusively on topics about which he is not an expert.[5] Mr. Cammer's expert report is also internally inconsistent and should not be qualified as expert opinion.

"An expert may be generally qualified but may lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003). Within an expert's area of expertise, the expert opinion must be "connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001) (emphasis added). "Expert testimony rooted in 'subjective belief or unsupported speculation' does not suffice." *Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 590).

Because Mr. Cammer's report is one page long, each of his opinions are addressed individually:

      **i.**      **"There seems to be many inconsistencies in the pictures as compared to Frances White's testimony. Pictures are easily modified, with metadata able to be changed in many ways."**

Mr. Cammer has not disclosed any relevant experience on image modification or metadata. Even if Mr. Cammer was an expert on image modification or metadata, his general declaration about the ease of modification is not relevant evidence, because it does not opine on whether or not the images at issue in this case were modified either in substance or in metadata. In addition, whether the images were modified is not at issue in this case at all; UAF can own the copyright to a 'Photoshop-ed' image or a raw photograph and holds the same rights against infringement. This

---

[5] Again, this is particularly troubling where the report's file designates "Ed Kiley" as its author. *See* Section 1(B) *supra*. Testifying outside Mr. Cammer's area of expertise demonstrates, at least, dual authorship.

Court held in September that Plaintiff owns a valid copyright in 21 of the images at issue in this case.  Memorandum Opinion, at 9 (Sep. 1, 2016) [Doc. 65].

       **ii.**      **"There also appear to be discrepancies in the numbering and metadata shown in screen prints provided by Plaintiffs Attorney."**

Mr. Cammer has not disclosed any relevant experience on image numbering or metadata.  Oddly, Mr. Cammer acknowledges that he cannot evaluate file metadata, because "we . . . have not received [electronic copies of the pictures in question] as of this date."  Nonetheless, Mr. Cammer proceeds to comment on file metadata "discrepancies," although he does not identify any "discrepanc[y]" in the numbering or metadata for Plaintiff to evaluate with its experts.  Mr. Cammer also does not identify any "reliable principles and methods," FRE 702(c), used to identify the alleged discrepancies except for how the images "appear."  Looking at a photograph is not a reliable methodology within the meaning of FRE 702.

       **iii.**     **"I observed that more than half of the pictures are close-up pictures of a plant. There are very little distinguishable characteristics shown. They are almost like taking a picture of your lawn."**

Mr. Cammer's opinion that all plants look alike belies his ability to serve as an expert on copyrighted images.  As stated in his report, any "close-up" image of a plant is "almost like taking a picture of your lawn."  This opinion violates every section of FRE 702.  It is not based on "scientific, technical, or other specialized knowledge," it is not based on any "facts or data," and it is not the result of any "principles and methods."  This is a bare assertion about what a picture looks like to someone who is not an expert in photography, imagery, or any related subject and it is the epitome of lay testimony.

> **iv.**     **"A number of the pictures appear to have been electronically modified or enhanced. I would question as the ownership of the original picture that was altered by Stepables/Under A Foot Company."**

Mr. Cammer is not an expert in copyright.  Even if Mr. Cammer were an expert in copyright, his report does not disclose any investigation into the registration or history of any of the images at issue in this case.  His assertion that the "pictures appear to have been electronically modified or enhanced" is not based on any experience, data, or method; once again he has judged the images solely by how they "appear," without any relevant experience in photography or imagery.  Again, UAF is allowed to register copyrights in modified or enhanced pictures.  Whether or not Mr. Cammer "would question" Plaintiff's copyright is well outside his expertise and appears to advise Defendant's counsel, not provide an expert opinion.  Again, expert testimony on the validity of copyrights is inappropriate at this stage, because this Court has already held that Plaintiff owns a copyright in 21 of the images at issue.  Memorandum Opinion, at 9 (Sep. 1, 2016) [Doc. 65].

> **v.**     **"It appears that a number of the pictures may have been taken illegally since photography was not allowed for commercial use at some of the sites the picture was taken."**

Mr. Cammer does not provide any basis whatsoever for his claims that the images at issue were taken illegally.  Mr. Cammer's opinion on this question is not relevant to this action.  Moreover, any commentary on this question provided to the jury would be highly prejudicial speculation.

> vi.　"I am also questioning circumstances where and how the pictures were taken. In one instance alone of 'Isotoma fluvitalis Blue Star Brick Path DSO2417' there are many inconsistencies
>
> In documents supplied in the filing of the lawsuit Ms White claims the picture was taken on May 2, 2002 @ 7:24AM. I question the time of day, sun exposure, angles and shadows shown in the picture. It also seems impossible to have taken this picture from the street while in a truck since the angle is too high and the roadway appears to run parallel to the front of the house not the side of the house. In addition my observation that a $10 - $15 t-shirt shows about what the value of the picture is. This is just one of many inconsistencies noted in review of all the information."

Mr. Cammer does not disclose any experience which would qualify him as an expert in forensic image analysis or any related field.  Nevertheless, Mr. Cammer offers his opinion in his capacity as an I.T. professional on the angle of light hitting a plant in an image, the likely location of the camera at the time the image was taken, and the angle of roadways.[6]  Mr. Cammer does not identify any analysis used to determine the location of the sun over Oregon and does not disclose his current or habitual residence.

Mr. Cammer also opines without any context about the cost of a t-shirt.  Based upon these disclosures, it reasonable to assume that any other undisclosed "inconsistencies" were not found as the result of the application of any operating systems, software, or hardware process with proven reliability and demonstrated reliable application.  Thus, all of the opinions in this claim are outside Mr. Cammer's area of expertise.

---

[6] A similar theory, that the angle of light in images from the Apollo 11 mission demonstrated NASA had faked the moon landing, was famously debunked.  *Myth Busters: Episode 104 - NASA Moon Landing* (Discovery Channel broadcast Aug. 27, 2008).

vii. **"I was also asked to try to determine a comparable value for similar pictures and I was able to produce pictures of similar planting scenes showing the 21 pictures in question. In review of a number of sites I was able to procure hi quality, hi resolution garden scenes showing most of the plants in question. These pictures and the rights to utilize them in sales/marketing initiatives, brochures and web sites ranged in price from $10.00 to $25.00 each for multiple uses. These sites included Shutter Stock, IStock, Nova Photo Graphic, Creative Common sites and others."**

After admitting that he is incapable of distinguishing the images at issue in this case from photographs of his own lawn (see item iii *supra*), Mr. Cammer discusses his attempt to identify images similar to those owned by UAF.  Mr. Cammer does not have any expertise in photography or imaging.  Mr. Cammer does not identify any method or process by which he identified similar images, let alone a reliable one.  Mr. Cammer does not specify whether the images he reviewed depict Stepables and other hardy, walkable plants or just plants selected at random.  The opinion expressed in this claim is not the result of Mr. Cammer's "scientific, technical, or other specialized knowledge," his review of "facts or data," or the result of "reliable principles and methods . . . reliably applied."  FRE 702.  This claim is therefore not expert testimony and should be excluded.

In sum, Mr. Cammer's report testifies exclusively to opinions about which he is not an expert.  Because Mr. Cammer does not have any expertise in photography, forensic image analysis, or image licensing, his opinions on the angle of light in photographs or the likely licensing cost for similar photographs constitutes mere speculation.  His testimony is made even less reliable by the Mr. Kiley's apparent authorship of the report.  Ex. 11.  Accordingly, this Court should strike Mr. Cammer's expert report and disqualify him from testifying as an expert witness in this case.

     **B.**     *The Report and Opinion of Mr. Lovejoy Should Be Excluded Because They Are Not An Appropriate Subject of Expert Testimony.*

Mr. Lovejoy's report was produced in his capacity as president and owner of HIP Labels, LLC, where he and his company lease "photos of plants." <u>Ex. 9</u>. Mr. Lovejoy's report, which occupies less than half a page, contains the following four findings:

> In 2016, HIP typically paid between $2.00 and $25.00 per photograph per production run.
> In 2016, the average price HIP paid was $9.14 per photograph per production run.
> In 2016, 4705 photographs were licensed.
> HIP has never paid more than $599.96 for the use of any photograph.

Based upon Mr. Lovejoy's report, he is providing this Court with facts about his company's licensing of photographs of plants. He is not, however, providing this Court with an expert opinion as to the value of the images at issue in this case. His testimony, therefore, is not expert testimony within the meaning of FRE 702.

Unlike Mr. Cammer, Mr. Lovejoy may have "specialized knowledge" about the facts he declares, but he has not utilized that knowledge to "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702(a). Because Mr. Lovejoy's report states facts about his business but does not apply those facts to questions raised in this case, it is impossible to know whether he has "sufficient facts or data." FRE 702(b). Mr. Lovejoy's testimony also is not "the product of reliable principles and methods . . . reliably applied," FRE 702(c)-(d), because he has not applied any principles or methods to determine the value of the images at issue in this case. Indeed, Mr. Lovejoy has not applied any principles or methods to determine anything at all.

In addition, because Mr. Lovejoy makes no attempt to deduce the value of the images at issue in this case, he is no better positioned than the jury to assess the import of the facts to which he has testified. "When laypersons are just 'as capable of comprehending the primary facts and of drawing correct conclusions from them' as are experts, expert testimony may properly be

excluded.'"  *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016) (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).

Mr. Lovejoy's four-sentence-long recitation of facts about his business does not constitute expert testimony within the meaning of FRE 702.  Accordingly, this Court should strike his expert report and disqualify him from testifying as an expert witness.  If Defendant seeks to have Mr. Lovejoy testify as a fact witness regarding his business, then Defendant must disclose him as a fact witness and his testimony should be restricted to those facts and not their applicability to the images at issue in this case.

   **C.    The Report and Opinion of Mr. Strasdauskas Is Not Based On Sufficient Facts Or Data And Should Be Excluded.**

Mr. Strasdauskas's report is devoid of any factual or data-driven underpinnings.  *See generally* <u>Ex. 10</u>.  The report does not disclose any evidence upon which its author relied or the basis for any calculation its author made.  By failing to disclose any facts or data which formed the basis for his opinion, Mr. Strasdauskas's report falls short of the FRE 702 requirement that expert opinions be based on "sufficient facts or data."

Because FRE requires compliance with all four parts of its test, an expert report and opinion may be excluded for failure to provide sufficient facts or data in support of its opinion.  *Equal Rights Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *18 (D. Md. Mar. 31, 2016) ("The reports lack 'sufficient facts or data' to support these assertions"); *Waskowski v. State Farm Mut. Auto. Ins. Co.*, 970 F. Supp. 2d 714, 722 (E.D. Mich. 2013) (excluding a nine-page report and related expert testimony for want of "sufficient facts or data").  Even where sufficient facts or data may exist to support an expert's opinion, failure to disclose those facts or data is sufficient to exclude opinions based upon those facts or data.  *Witt v. Chesapeake Expl., L.L.C.*, No. 2:10-CV-22-TJW, 2011 WL 2790174, at *2 (E.D. Tex. July 14, 2011).

17

Though the report of Mr. Strasdauskas is more than one page long, its opinion and the basis for that opinion occupy a single paragraph:

> We took the actual total of the fifteen Treadwell plant tags purchased from 2011 to 2014 and assumed all had been sold at the average sale price of each type of plant. This was a conservative approach and was taken since an inventory count of the tags were not taken at December 31, 2014. This would have maximized the economic benefit to Exterior Design, Inc. since tags in inventory would have been included resulting in a higher sales number. The actual costs of the materials, labor, and direct overhead per plant from 2011 to 2014 were calculated and subtracted from sales to arrive at a gross profit. We then allocated an indirect cost for general and administrative expense based upon actual general and administrative expenses from 2011 to 2014 as a percentage of actual sales from 2011 to 2014 as reported on the Company's tax returns.  The estimated economic benefit before income taxes to Exterior Design, Inc.  From the sale of the fifteen Treadwell plants would have approximated $35,000.00.  Documentation of the above referenced calculations will be provided upon request.

Ex. 10 at 2.  In addition, the report clarifies that Mr. Strasdauskas's "estimates are based upon the examination of documents and materials from [Defendant's] tax returns, physical plant and tag inventory," yet the tax returns and tag and inventory summaries  provided in discovery lack the specificity necessary to allow reasonable review by Plaintiffs or experts. Defendant declined many reasonable opportunities to cure this failure.

Mr. Strasdauskas's failure to include any underlying facts or data is problematic for at least three reasons.  First, Mr. Strasdauskas's failure to include or attach the documents, data, calculations, and bases for calculations to his report prevents Plaintiff from timely preparing for deposition or response.  Because Mr. Strasdauskas's testimony does not relate to that of Prof. Sedlik (see Section 1(A) *supra*), Plaintiff would need a new expert and an appropriate amount of time to review Mr. Strasdauskas's findings before deposition.  By failing to provide any basis for his findings, Strasdauskas has prevented Plaintiff from preparing, undermining the core purpose of expert witness deposition.

Second, Defendant has not produced any document in discovery that would form the basis for Mr. Strasdauskas's opinions. Mr. Strasdauskas indicates that his "estimates are based upon the examination of documents and materials from the client's tax returns, physical plant and tag inventory." Ex. 10 at 1. Defendant produced its tax returns for each relevant year. Defendant's disclosures regarding "physical plant and tag inventory" were cryptic at best; they do not provide several relevant details or demonstrate a relationship to the images at issue in this case. If more detailed documents were provided to Mr. Strasdauskas but not to Plaintiff, then Defendant has been shirking its discovery responsibilities in an effort to prevent Plaintiff from reviewing relevant documents while it generates an expert report. This problem is compounded by the fact that Defendant waited until the Rebuttal Report deadline to disclose Mr. Strasdauskas as an expert witness and transmit his report. Plaintiff has been deprived of both the underlying documentary evidence and the ability to respond to Mr. Strasdauskas's opinion with rebuttal testimony.

Third, Mr. Strasdauskas's report admits to vague, unreliable estimation. His conclusion that Defendant earned approximately $35,000.00[7] from the sale of Treadwell plants, Ex. 10 at 2, is not based on company sales records or other reliable business records. Instead, the report makes several assumptions about the relationship between inventory and sales in order to guess what percent of Defendant's tax-return-reported income came from Treadwell plants. From what little Mr. Strasdauskas discloses, it is apparent that his estimate is based on review of only 15 of the 24 Treadwell tags. Mr. Strasdauskas also omits any mention of profits generated from online sales or non-plant sales, including brochures, signs, banners, or display cards. Defendant has not adequately demonstrated that sales of Treadwell plants are unavailable from its ordinary business records and, therefore, should not be permitted to engage in speculation regarding its likely sales.

---

[7] The mere fact that Mr. Strasdauskas's report lands on such a round number demonstrates the inexact nature of its analysis.

The report of Mr. Strasdauskas is not based on sufficient facts or data.  Thus, "it is no more than a hypothesis, and it thus is not knowledge, nor is it based upon sufficient facts or data or the product of reliable principles and methods applied reliably to the facts of the case." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (internal quotation marks and alterations omitted).  If underlying facts or data existed, they were not provided to Plaintiff in time for full review.  Even if the report does form a reasonable estimation, it is unreasonable to approximate Defendant's sales when those sales are customary business records and these records have not been disclosed.  Accordingly, this Court should strike the report of Mr. Strasdauskas and disqualify him from testifying as an expert in this case.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiff respectfully requests that this Court strike the expert reports of Edward Cammer, Robert Lionel Lovejoy Jr., and Tim Strasdauskas and disqualify all three from testifying as experts in the above-captioned action.

Respectfully submitted,

  /s/ Jan I. Berlage
Jan I. Berlage (23937)
Gohn Hankey Stichel & Berlage LLP
201 North Charles Street, Suite 2101
Baltimore, Maryland 21201
(410) 752-9300 (telephone)
(410) 752-2519 (facsimile)
JBerlage@ghsllp.com


Michael Dell Long (*Pro Hac Vice*)
Long Law PDX
621 SW Morrison Street, Suite 1420
Portland, Oregon 97205
(503) 804-0480 (telephone)
(503) 273-8842 (facsimile)
mlong@longlawpdx.com

*Attorneys for Under A Foot Plant, Co.*

## CERTIFICATE OF GOOD FAITH

Plaintiff's counsel has made good faith attempts to discuss with opposing counsel the matters addressed in Plaintiff's Motion to Strike Defendant's Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts.  Plaintiff's counsel's efforts are set forth in detail in the Motion and in the exhibits thereto.  Plaintiff's counsel hereby certifies that, despite his good faith efforts, he was unable to reach an amicable resolution of this dispute with Defendant's counsel.

 /s/ Jan I. Berlage
Jan I. Berlage

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2017, a copy of the foregoing Motion to Strike Defendant's Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts, along with a copy of these Certificates and all exhibits, was served via first class mail, postage prepaid, on:

Charles A. Arcodia, Esq.
Law Office of Charles A. Arcodia
14346 Jarrettsville Pike, Suite 3
Phoenix, Maryland 21131

 /s/ Jan I. Berlage
Jan I. Berlage