IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNDER A FOOT PLANT, CO., | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. 1:15-cv-00871 (BPG) |
| EXTERIOR DESIGN, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**RENEWED MOTION TO STRIKE DEFENDANT'S REBUTTAL EXPERT REPORTS
AND DISQUALIFY DEFENDANT'S REBUTTAL EXPERTS**

Pursuant to Federal Rules of Civil Procedure 26(a)(2) and (g), Federal Rule of Evidence 702, and Local Rules, Appendix A, Guideline 1(f), and this Court's Letter Order [Doc. 78], Plaintiff Under A Foot Plant, Co. ("UAFPC") hereby renews its Motion to Strike Defendant Exterior Design, Inc.'s ("EDI") Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts, and states:

**FACTUAL BACKGROUND**

**Plaintiff's Original Motion**

1. On October 25, 2016, this Court entered an Order [Doc. 69] (the "Experts Scheduling Order") adopting the schedule for expert discovery proposed in the October 18, 2016 Joint Status Report [Doc. 68]. The Experts Scheduling Order was based on a schedule that the Parties negotiated between October 4, 2016 and October 13, 2016. *See* Email Exchange between Charles Arcodia to Jan I. Berlage, attached as <u>Exhibit 1</u>. The Experts Scheduling Order confirmed that all Expert Reports (Plaintiff's and Defendant's) were due on December 15, 2016 and that all Rebuttal Reports were due on January 30, 2017.

2. On December 8, 2015, almost a year prior to the entry of the Experts Scheduling Order, Plaintiff designated Professor Jeffrey Sedlik as its damages expert. In accordance with the Experts Scheduling Order, Plaintiff sent Prof. Sedlik's expert report and exhibits to Defendant on December 15, 2016. Plaintiff then sent corrected exhibits to Defendant on December 16, 2016.

3. Defendant did not transmit any expert reports to Plaintiff on or before the December 15, 2016 deadline, leaving itself only the opportunity to submit a rebuttal report responsive to Professor Sedlik's expert report.

4. In a letter dated January 28, 2017, Defendant simultaneously designated Robert Lionel Lovejoy Jr. as an expert witness and transmitted expert reports for Mr. Lovejoy and Edward Cammer. Then, in a letter dated January 30, 2017, Defendant transmitted an expert report for Tim Strasdauskas.

5. On February 1, 2017, pursuant to this Court's guidance on discovery objections in Local Rules, Appendix A, Guideline 1(f), Plaintiff sent a letter to Defendant's counsel identifying the procedural and substantive failures in Defendant's expert reports. Letter from Jan I. Berlage to Charles A. Arcodia (Feb. 1, 2017), attached as Exhibit 2.

6. The next morning, Defendant's counsel sent a responsive letter stating that the "Plaintiff's experts (*sic*) reports would be due December 15, 2016 and then defense expert reports in rebuttal to the same would be due January 30, 1017 (*sic*)." Letter from Charles A. Arcodia to Jan I. Berlage and Michael Dell Long (Feb. 2, 2017), attached as Exhibit 3. Defendant's counsel appeared to reaffirm the schedule in the Experts Scheduling Order.

7. Rather than withdraw or even attempt to supplement the reports, Defendant's counsel took the position that his experts' reports were "succinct" and that his responsive letter dealt with the deficiencies raised in our February 1, 2017 letter. *Id*.

8. On February 3, 2017, Plaintiff filed a Motion to Strike Defendant's Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts [Doc. 71] (the "Original Motion").

9. On February 16, 2017, Defendant filed its opposition to the Original Motion [Doc. 73].

10. On February 24, 2017, Plaintiff filed its Reply in support of the Original Motion [Doc. 75].

11. During the pendency of the Original Motion, Defendant submitted revised reports containing signatures from the authors, but no other changes or supplements.

### The Court's Order

12. On March 24, 2017, this Court entered a Letter Order [Doc. 78] (the "Letter Order") denying the Original Motion without prejudice to re-file.

13. The Letter Order expressed concern about the expert reports ("[P]laintiff raises valid concerns regarding apparent procedural and substantive deficiencies"), but, in order to give Defendant a chance to cure the deficiencies, directed Defendant "to submit supplemental expert reports which are fully compliant with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) by **Thursday, March 30, 2017**." [Doc. 78 at 1 (emphasis in original)].

14. The Letter Order also extended several deadlines, including an extension of the deadline to file Motions in Limine to Tuesday, April 4, 2017. [Doc. 78 at 2].

### Defendant's Supplemented Reports

15. On March 30, 2017, Defendant transmitted to Plaintiff two supplemented expert reports for Edward Cammer and Robert Lionel Lovejoy Jr., along with a letter from Defendant's counsel in which he alleges facts about each of Defendant's three experts. Expert Report of Edward Cammer, attached as Exhibit 4 [hereinafter Cammer Report II]; Expert Report of Robert

Lionel Lovejoy Jr., attached as <u>Exhibit 5</u> [hereinafter Lovejoy Report II]; Letter from Charles Arcodia to Jan I. Berlage (Mar. 29, 2017), attached as <u>Exhibit 6</u> [hereinafter Supplementing Letter].

16. Defendant did not transmit a supplemented expert report for Mr. Strasdauskas and, when asked whether one would be forthcoming, its counsel wrote "I believe I made the necessary supplements in the attached letter. Thx." Email from Charles Arcodia to Joseph Dudek (Mar. 30, 2017), attached as <u>Exhibit 7</u>. Therefore, this Renewed Motion refers to the signed version Mr. Strasdauskas's original report. Expert Report of Timothy Strasdauskas, attached as <u>Exhibit 8</u> [hereinafter Strasdauskas Report].

17. On March 31, 2017, Plaintiff sent Defendant a new Discovery Guideline 1(f) letter (the "Second Expert Disclosure Letter"), identifying the remaining deficiencies in Defendant's new reports and asking that they be corrected or withdrawn. Letter from Jan I. Berlage to Charles Arcodia (Mar. 31, 2017), attached as <u>Exhibit 9</u>. Because this Renewed Motion was due April 4, 2017 under the Court's revised schedule [Doc. 78 at 2], the Second Expert Disclosure Letter asked Defendant to cure these deficiencies by April 2, 2017.

18. In response to the Second Expert Disclosure Letter, counsel for Defendant indicated his intent to respond substantively by April 3, 2017, the day before this Renewed Motion would be due. Email from Charles Arcodia to Joseph Dudek (Mar. 31, 2017), attached as <u>Exhibit 10</u>.

19. On April 3, 2017 and April 4, 2017, Defendant's counsel indicated via email his intent to provide signed copies of the reports. At the time of this filing, Plaintiff has not received any supplemental disclosure.

4

20.     Despite submitting original reports late and having an additional two months in which to cure the deficiencies in its reports,[1] Defendant has not submitted reports that meet the requirements of Fed. R. Civ. P. 26 or Fed. R. Ev. 702.  Plaintiff, therefore, renews its motion.

## ARGUMENT

Plaintiff incorporates by reference the argument previously before the Court in its Original Motion [Doc. 71] and Reply [Doc. 75].  In order to keep this Renewed Motion concise, it relies as much as possible on law and analysis previously before this Court.  Where possible, explanatory parentheticals or string citations have been trimmed and quotations have been shortened.

**1.    The Reports of Messrs. Cammer, Lovejoy, and Strasdauskas Should Be Stricken For Procedural Failures.**

All three of Defendant's expert reports suffer from procedural failures that justify this Court striking them.  Defendant already violated this Court's Experts Scheduling Order by submitting non-rebuttal expert reports after December 15, 2016.  Moreover, even after a two-month opportunity to withdraw or supplement the reports, Defendant has not produced a single complete expert report.  All three of the reports should be stricken.

### A.    *Even after supplementing, none of Defendant's are 'Rebuttal Reports,' So They Were Untimely.*

Even after a reasonable opportunity to supplement its reports, Defendant cannot demonstrate that its expert reports are "rebuttal reports" within the meaning of this Court's Experts Scheduling Order [Doc. 69].  Thus, all three reports were submitted (in the first instance) 44-46 days late.  The supplemented reports also take advantage of this Court's leniency by stating opinions formed after the original reports were submitted.  For both these reasons, the reports are late and should be stricken.

---

[1] Plaintiff first identified these failures in a Discovery Guideline 1 letter sent on February 1, 2017.  *See* Ex. 2 to Motion [Doc. 71-2].

5

An expert report is a Rebuttal Report "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii) [hereinafter FRCP]; *City of Gary v. Shafer*, No. 2:07-CV-56-PRC, 2009 WL 1370997, at *3 (N.D. Ind. May 13, 2009). "The party who fails to timely disclose her expert or expert report bears the burden to 'demonstrate substantial justification for her failure to comply.'" *Khosmukhamedov v. Potomac Elec. Power Co.*, No. CIV.A. AW-11-449, 2012 WL 1670152, at *2 (D. Md. May 11, 2012) (quoting *Carr v. Deeds*, 453 F.3d 593, 604–05 (4th Cir. 2006)). Supplementation of an expert report **does not cure its tardiness**. *Montgomery v. CSX Transportation*, No. SAG-14-1520, 2016 WL 5390809, at *2 (D. Md. Sept. 27, 2016).

All three reports remain non-compliant. First, Strasdauskas Report disclosed Mr. Strasdauskas's evaluation of the "net economic benefit to [Defendant] Exterior Design, Inc." from its infringement, Ex. 8, despite the fact that Prof. Sedlik's report makes no attempt to value Defendant's profits related to infringement. Because Plaintiff can elect damages in a Copyright action, 17 U.S.C. § 504, a summary of the infringer's profits is irrelevant to the question of actual damages or statutory damages. Strasdauskas Report does not reference Prof. Sedlik's report or even mention his name.

Second, Cammer Report II states opinions entirely unrelated to Prof. Sedlik's report. Mr. Cammer argues about whether or not Plaintiff owns the Images (which this Court already resolved through summary judgment [Doc. 65]), an issue which Prof. Sedlik's report does not address. Like Strasdauskas Report, Cammer Report II does not refer to Prof. Sedlik's report or mention his name. Cammer Report II has some discussion of the value of what Mr. Cammer considers to be comparable images, but this issue is outside Mr. Cammer's expertise (see Section

2(A) *infra*) and does not rebut the data, calculations, method, or any other content in Prof. Sedlik's Report.

Third, Lovejoy Report II is the only report that even attempts to demonstrate that it is rebutting Prof. Sedlik's work. It states: "It is my expert opinion that the value of the pictures in question has been greatly overstated by Professor Jeffery (*sic*) Sedlik in his analysis. I am prepared to testify as to real and market values." But Mr. Lovejoy does not do any analysis to arrive at this conclusion. He does not calculate a value for the Images and he does not provide the basis for such a calculation. *See* Section 2(B) *infra*. He does not directly refute any premise or calculation in Mr. Sedlik's report; he just promises to refute at trial. Mr. Lovejoy's assertion that he is responding to Prof. Sedlik is pretext, and this Court should see through it.

In addition to the fact that the reports are not rebuttal reports, the new reports contain opinions that were prepared *after* the January 2017 deadline for rebuttal reports. Mr. Lovejoy, for example, appears to have engaged in an entirely new line of inquiry, presumably begun after Plaintiff filed its Motion to Strike and Exclude. He has, in that time, reviewed new information (Attachments A and B, as well as The Perennial Farm's tag purchases). It is reasonable to assume that Mr. Lovejoy's sudden $300/hour compensation began when he started reviewing documents and working on Lovejoy Report II. If his opinions were formed after he submitted his report, then Mr. Lovejoy's new report is even less timely than his first.

Defendant's choice to file non-rebuttal reports at the rebuttal report deadline prejudiced Plaintiff. Each of the non-rebuttal opinions expressed in the reports (particularly those of Mr. Cammer) would ordinarily afford Plaintiff the opportunity to form a rebuttal report. By masking these as rebuttal opinions, Defendant has deprived Plaintiff the ability to directly refute the testimony of Defendant's purported experts.

Defendant had ample notice that non-rebuttal reports and opinions were due in December 2016. [Doc. 71-1 at 1-3]. In each report, Defendant "provided an expert opinion in the guise of a rebuttal report but designed to support [a] proposed new theory of liability" or other novel opinions. *Al Jazeera Media Network v. Dow Lohnes PLLC*, No. CV DKC 13-2769, 2015 WL 8316102, at *2 (D. Md. Dec. 9, 2015). Under this guise, Defendant attempted to submit expert reports 44-46 days late and then refused to supplement them until this Court's Letter Order two months later. These reports are now nearly four months late and there are less than two months until trial. They should be stricken.

### B.     *Defendant's Expert Reports Remain Incomplete.*

Under both the express language of FRCP 26(a)(2) and the doctrine of this Court, the reports of Messrs. Cammer, Lovejoy, and Strasdauskas remain incomplete, even after several opportunities to cure their deficiencies. The incompleteness of these reports prejudices Plaintiff by denying it a reasonable opportunity to interrogate the findings of Defendant's purported experts prior to deposition. The incompleteness is exacerbated by the fact that several reports appear to have been authored or generated by Defendant's marketing director in collaboration with the purported experts.

FRCP 26(a)(2)(B) provides a list of mandatory elements for expert disclosures including, but not limited to: (1) the expert's signature; (2) "a complete statement of all opinions the witness will express and the basis and reasons for them;" (3) "the facts or data considered by the witness;" (4) "any exhibits;" (5) "a list of all publications authored in the previous 10 years;" (6) "a list of all other cases in which . . . the witness testified as an expert;" and (7) "a statement of . . . compensation." In addition to this list, "a report is complete, and compliant with Rule 26(a)(2), if it is sufficiently detailed such that 'surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.'" *CSX*, 2016 WL 5390809, at *2.

In this case, inclusion of every mandatory element (including a signature) is uniquely important, because Defendant's marketing director, Ed Kiley, has been involved in the drafting of at least two of the reports. Mr. Cammer's initial report indicated that Ed Kiley was its author. [Doc. 71-11]. Similarly, both Cammer Report II and Lovejoy Report II indicate that Mr. Kiley was involved in their generation. *See* PDF Properties, attached as Exhibit 11. The only way Defendant can demonstrate that these reports are the independent opinions of its hired expert is to provide original, signed copies with all of the requisite elements. All three reports fail this standard.

Strasdauskas Report, which Defendant has not supplemented, remains deficient for all the reasons already articulated in the Original Motion. Strasdauskas Report does not contain "exhibits," a "list of publications," or a "list of all other cases" in which he has testified. It relies on several documents and other data that are not attached and have not, to date, been disclosed.[2] This includes any calculations made to arrive at his opinions and the basis for those calculations. The Supplementing Letter from Defendant's counsel does not address any of these failures, instead reciting back portions of the report. Ex. 6 at 2-3. These materials are necessary to interrogate Mr. Strasdauskas's findings and to have an efficient, productive deposition.

Cammer Report II cures some of the failures from Mr. Cammer's first report. *See* Motion [Doc. 71] at 7-8. It attaches several sets of pictures as examples of the type of material Mr. Cammer reviewed and states several additional opinions. It does not, however, contain a signature, a list of publications, a list of all other cases in which he has testified, or a statement of

---

[2] Defendant offered to produce these documents with appropriate confidentiality protections. Letter from Charles Arcodia to Jan I. Berlage (Feb. 16, 2017), attached as Exhibit 12. Plaintiff responded that adequate confidentiality protections already exist, but that disclosure may be unnecessary with a motion pending. Letter from Jan I. Berlage to Charles Arcodia (Feb. 22, 2017), attached as Exhibit 13. The Motion was denied on March 24, 2017, but Defendant has not provided this information.

compensation.  In addition, Cammer Report II continues to refer to data, exhibits, and opinions that it does not attach or disclose:

- "I have examined a number of different areas."
- "There seems to be many inconsistencies in the pictures."
- "There also appear to be discrepancies in the numbering and metadata."
- "It appears that a number of pictures may have been taken illegally . . . .  One such example is . . ."
- "In one instance alone of 'Isotoma fluvitalis Blue Star Brick Path DSO2417' there are many inconsistencies . . . .'  This is just one of many inconsistencies noted in review of all the information."
- "I have reviewed a number of the lease/license agreements."
- "I am enclosing only part of the samples obtained which are similar or better than Ms. White's claimed pictures."
- "A number of pictures . . . have been obtained illegally."

Ex. 4.  Counsel for Defendant exacerbated this problem by writing separately that "Mr. Cammer will rely on the exhibits identified by the Plaintiff's (*sic*) in the pretrial report."  Supplementing Letter, Ex. 6, at 2.  These statements ignore this Court's explicit direction to include "all opinions the witness will express and the basis and reasons for them."  If Mr. Cammer intends to rely on exhibits not relied upon in his report or intends to provide opinions at trial not provided in his report, then Cammer Report II violates the plain language of FRCP 26(a)(2)(B) and the Letter Order.

The Supplementing Letter also asserts several facts about Mr. Cammer that are not contained in Cammer Report II.  "He is not published and his qualifications are based on his experience with computers.  Mr. Cammer has never testified as an expert and will be charging $300/hour for his time."  Ex. 6 at 2.  FRCP 26(a)(2)(B) makes clear that this information must appear in the report, not alleged separately in a letter from counsel.  Especially here, where file

metadata raises the specter that Mr. Kiley is involved in authoring Mr. Cammer's report, having each item in the report, signed by the expert, is important.  *See* Section 2(A) *infra*; Ex. 11; [Doc. 71-1].  Defendant's counsel's statements about what Defendant's experts might say at trial do not ameliorate this concern.

Lovejoy Report II, although it now discloses Mr. Lovejoy's experience and compensation, is still incomplete.  It now discusses in detail Mr. Lovejoy's "extensive experience in the design and manufacture of Plant Stake Tags, Plant Hanging Tags and Plant Pot Wraps."[3]  Ex. 5 at 1.  It discloses a "$300 per hour" rate of compensation.  *Id*.  The report does not, however, include all opinions the witness will express.  Instead, it states "It is my expert opinion that the value of the pictures in question has been greatly overstated by Professor Jeffery (*sic*) Sedlik in his analysis."  Mr. Lovejoy does not identify an alternative value for the Images, he does not identify any particular failure in Prof. Sedlik's analysis, and he does not provide the basis for any such calculation or determination.  As with Mr. Cammer, Defendant's counsel asserts that Mr. Lovejoy will use documents he has not yet reviewed.  Supplementing Letter, Ex. 6, at 1 ("Mr (*sic*) Lovejoy will rely solely on the Plaintiff's exhibits as outlined in the pretrial report").  In short, Mr. Lovejoy's report does not state an opinion as to the actual value of the Images, other than his certainty that Plaintiff's expert is wrong.  That conclusory opinion is insufficient with trial barely a month away.

Lovejoy Report II also fails to include his signature, a list of his publications, and a list of his previous appearances as an expert witness.  The Supplementing Letter alleges that he has "no publications within the last 10 years" and that he "has never testified as an expert."  Ex. 6 at 1.  Counsel for Defendant had previously stated that Mr. Lovejoy was not being compensated for his

---

[3] Indeed, Mr. Lovejoy cites his own "extensive experience" four times in the one-page report.

11

time, Ex. 3, which is false.  In that context, all expert disclosures must be in a signed report, not in a letter from counsel.

Despite opportunities offered by Plaintiff and this Court, Defendant has failed to produce complete expert reports.  The purported experts intend to rely on other documents and come to new conclusions before trial.  In that environment, it is impossible to adequately measure the validity of their not-yet-formed opinions.  Accordingly, the reports should be stricken.

**2.    None of Defendant's Expert Reports Contain Expert Testimony Under Fed. R. Evid. 702, So the Reports Should Be Excluded and the Witnesses Disqualified.**

Rule 702 of the Federal Rules of Evidence ("FRE") governs the testimony of expert witnesses.  "Rule 702 imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable."  *Nease v. Ford Motor Co.*, No. 15-1950, 2017 WL 437665, at *7 (4th Cir. Feb. 1, 2017).  Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The party seeking to introduce expert testimony has the burden of establishing its admissibility by a preponderance of the evidence.  *Equal Rights Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *16 (D. Md. Mar. 31, 2016).  None of Defendant's new reports meet this standard.

### A. *The Report and Opinion of Mr. Cammer Should Be Excluded Because They Are Outside the Scope of His Expertise.*

Edward Cammer designates himself as an I.T. professional "with thirty years progressive experience in operating systems, hardware and data processing."  Ex. 4 at 1.  Mr. Cammer

specializes in core I.T. tasks, including "operating systems," "networking," and computer "hardware." *Id*. Mr. Cammer does not disclose any experience in photography, digital photography, imaging software, image manipulation, photograph pricing, botany, copyright, or any similar field. Nevertheless, Mr. Cammer opines exclusively on topics about which he is not an expert.[4] That testimony should be excluded.

The original Motion has already gone line-by-line through Mr. Cammer's original opinions and demonstrated that they are unrelated to his expertise. [Doc. 71 at 11-15]. Cammer Report II includes all the same opinions (without any new discussion of related expertise) and then adds more. Mr. Cammer writes that he has done internet searches for similar pictures and found watermarked versions of the Images, that he has found similar pictures free for download, and that he is "prepared to testify as to value of comparable hi-resolution plant pictures and garden scenes and what I have documented would be reasonable cost." Ex. 4 at 2.

This is the epitome of lay testimony. In response to an expert report arguing that Plaintiff's pictures are rare and valuable, Defendant asked its IT guy to do a stock photo search for "similar" pictures. He asserts, without any relevant expertise, that any "hi resolution garden scene" has equivalent value[5] and tells us what other garden pictures tend to cost. He does not refute Prof. Sedlik's analysis that the rarity of Plaintiff's Images of specialized plants makes them particularly valuable; he simply assumes Prof. Sedlik is wrong. Neither this Court nor the jury needs an expert to tell them what the sale prices are on shutterstock.com or istockphoto.com.

---

[4] Again, this is particularly troubling where the report's file designates Defendant's marketing director, "Ed Kiley," as its author. *See* Section 1(B) *supra*. Testifying outside Mr. Cammer's area of expertise demonstrates, at least, dual authorship.

[5] "They are almost like taking a picture of your lawn." Cammer Report II, Ex. 4, at 1.

13

In order to solve this problem, counsel for Defendant writes in the Supplementing Letter that Mr. Cammer "is an expert in computer imaging, creation of computer images and alteration of computer images." Ex. 6 at 2. Neither the Supplementing Letter nor Cammer Report II discloses any experience that would form the basis of such purported expertise. As Plaintiff has already argued, none of Mr. Cammer's disclosed qualifications would form the basis for expertise in these fields. Defendant's conclusory statement aside, neither Mr. Cammer nor counsel for Defendant has provided any basis for Mr. Cammer's testimony as an expert witness in the subjects about which he opines.

Cammer Report II contains only opinions about which he is not an expert. Because Mr. Cammer does not have any expertise in photography, forensic image analysis, or image licensing, his opinions on the angle of light in photographs or the likely licensing cost for "similar" photographs is a layman's speculation. His testimony is made even less reliable by Mr. Kiley's apparent involvement in Mr. Cammer's report. Ex. 4 at 2 ("with the assistance of Ed Kiley"); Ex. 11. Accordingly, this Court should strike Mr. Cammer's expert report and disqualify him from testifying as an expert witness in this case.

### B. The Report and Opinion of Mr. Lovejoy Should Be Excluded Because He Has Provided No Basis For His Conclusory Opinion.

Lovejoy Report II confirms that Mr. Lovejoy has "extensive experience" in certain plant-picture-related tasks. Ex. 5 at 1. He has not, however, attempted to calculate the value of the Images. As a result, Lovejoy Report II amounts to mere speculation under the established precedents in this Circuit and his testimony should be excluded.

Within an expert's area of expertise, the expert opinion must be "connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 F. App'x 177, 180 (4th Cir. 2001) (emphasis added). "Expert testimony rooted in 'subjective

14

belief or unsupported speculation' does not suffice." *Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 590).

Lovejoy Report II does not recite any relevant facts that were not previously disclosed in Mr. Lovejoy's original report. The relevant changes Mr. Lovejoy has made (~~deletions~~ and <u>insertions</u>) are:

> In 2016, ~~HIP typically~~ <u>hip labels</u> paid between $2.00 and $25.00 per photograph per production run <u>(thousands of units)</u>. ~~In 2016, the average price HIP paid was $9.14 per photograph per production run.~~ In 2016, 4705 photographs were licensed <u>or acquired</u>. ~~HIP~~ <u>hip</u> has never paid more than $599.96 for the use of any photograph <u>in our over 15 years of business</u>.

*Compare* <u>Ex. 5</u> at 1 *with* [Doc. 71-9]. In addition to these background facts, Mr. Lovejoy "reviewed tag purchases from The Perennial Farm for plant varieties in question."

Without any analysis or any calculation, the next sentence concludes: "It is my expert opinion that the value of the pictures in question has been greatly overstated by [Prof. Sedlik]." *Id*. Mr. Lovejoy makes no attempt to calculate the value of the Images. Mr. Lovejoy makes no effort to demonstrate that the images he usually buys are market-equivalent to the Images at issue in this case. He just says Plaintiff's expert is wrong. That is not expert testimony.

Mr. Lovejoy makes no attempt to deduce the value of the images at issue in this case. He is, therefore, no better positioned than the jury to assess the import of the facts his report recites. "When laypersons are just 'as capable of comprehending the primary facts and of drawing correct conclusions from them' as are experts, expert testimony may properly be excluded.'" *Scinto v. Stansberry*, 841 F.3d 219, 230 (4th Cir. 2016) (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). And because his refutation of Prof. Sedlik's report is tantamount to "it's wrong because I say it's wrong," he should not be permitted to testify as an expert to the jury. His report should be stricken and he should be disqualified as an expert.

C.     *The Report and Opinion of Mr. Strasdauskas Is Not Based On Sufficient Facts Or Data And Should Be Excluded.*

Mr. Strasdauskas's report was devoid of any factual or data-driven underpinnings when Plaintiff filed its original Motion.  *See generally* [Doc. 71-10] or Ex. 8.  The report did not disclose any evidence upon which its author relied or the basis for any calculation its author made.  By failing to disclose any facts or data which formed the basis for his opinion, Mr. Strasdauskas's report fell short of the FRE 702 requirement that expert opinions be based on "sufficient facts or data."  Defendant has elected not to supplement Mr. Strasdauskas's report, Ex. 7, so these deficiencies remain.

Because FRE requires compliance with all four parts of its test, an expert report and opinion may be excluded for failure to provide sufficient facts or data in support of its opinion.  *Equal Rights Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *18 (D. Md. Mar. 31, 2016).  Even where sufficient facts or data may exist to support an expert's opinion, failure to disclose those facts or data is sufficient to exclude opinions based upon those facts or data.  *Witt v. Chesapeake Expl., L.L.C.*, No. 2:10-CV-22-TJW, 2011 WL 2790174, at *2 (E.D. Tex. July 14, 2011).

Rather than repeat argument about this report, Plaintiff incorporates by reference Section 2(C) of its original Motion [Doc. 71 at 17-20].  In short, Defendant's failure to provide the basis for Mr. Strasdauskas's report (1) prevents Plaintiff from preparing for deposition or preparing a response; (2) suggests a violation of the discovery procedures; and (3) uses vague estimation, which suggests lack of foundation.  For all these reasons, Strasdauskas Report should be stricken and Mr. Strasdauskas should be disqualified as an expert.

**3.     Defendant's Additional Expert Witnesses Identified in the Proposed Joint Pretrial Report Should Also Be Disqualified.**

In addition to the expert witnesses discussed above, Defendant's section of the Proposed Joint Pretrial Order lists three other expert witnesses:

- Rick Watson, Perennial Farms, 12017 Glen Arm Road, Glen Arm, MD 21057

- Ed Kiley, Perennial Farms, 12017 Glen Arm Road, Glen Arm, MD 21057

- Tom Watson, Perennial Farms, 12017 Glen Arm Road, Glen Arm, MD 21057

These witnesses, each closely related to Defendant, are at minimum subject to FRCP 26(a)(2)(C) disclosure, including: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and  (ii) a summary of the facts and opinions to which the witness is expected to testify."  To date, Defendant has not provided this information for these three witnesses.  Accordingly, they should not be permitted to testify as experts at trial.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiff respectfully requests that this Court strike the expert reports of Edward Cammer, Robert Lionel Lovejoy Jr., and Tim Strasdauskas and disqualify all three from testifying as experts in the above-captioned action.

Respectfully submitted,

/s/ Jan I. Berlage
Jan I. Berlage (23937)
Gohn Hankey Stichel & Berlage LLP
201 North Charles Street, Suite 2101
Baltimore, Maryland 21201
(410) 752-9300 (telephone)
(410) 752-2519 (facsimile)
JBerlage@ghsllp.com


Michael Dell Long (*Pro Hac Vice*)
Long Law PDX
621 SW Morrison Street, Suite 1420
Portland, Oregon 97205
(503) 804-0480 (telephone)
(503) 273-8842 (facsimile)
mlong@longlawpdx.com

*Attorneys for Under A Foot Plant, Co.*

## CERTIFICATE OF GOOD FAITH

Plaintiff's counsel has made good faith attempts to discuss with opposing counsel the matters addressed in Plaintiff's Motion to Strike Defendant's Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts.  Plaintiff's counsel's efforts are set forth in detail in the Motion and in the exhibits thereto.  Plaintiff's counsel hereby certifies that, despite his good faith efforts, he was unable to reach an amicable resolution of this dispute with Defendant's counsel.

    /s/ Jan I. Berlage
Jan I. Berlage

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2017, a copy of the foregoing Motion to Strike Defendant's Rebuttal Expert Reports and Disqualify Defendant's Rebuttal Experts, along with a copy of these Certificates and all exhibits, was served via first class mail, postage prepaid, on:

Charles A. Arcodia, Esq.
Law Office of Charles A. Arcodia
14346 Jarrettsville Pike, Suite 3
Phoenix, Maryland 21131

    /s/ Jan I. Berlage
Jan I. Berlage