# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNDER A FOOT PLANT, CO.,

    Plaintiff,

v.                                             Civil No.: BPG-15-871

EXTERIOR DESIGN, INC.,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Following a four-day jury trial in May 2017, defendant Exterior Design, Inc. moved this court for judgment as a matter of law against plaintiff Under A Foot Plant, Co., arguing that plaintiff's damages expert presented unreliable and legally erroneous testimony, and that plaintiff had not adduced sufficient evidence that defendant infringed plaintiff's copyrights in its registered brochure and website. Currently pending before the court is: (1) Defendant's Renewed Motion for Judgment as a Matter of Law, or Alternatively, for a New Trial ("Defendant's Motion") (ECF No. 135); (2) Plaintiff's Opposition to Defendant's Motion ("Plaintiff's Opposition") (ECF No. 142); and (3) Defendant's Reply in Support of Its Motion ("Defendant's Reply") (ECF No. 146).[1] The issues are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons stated below, Defendant's Motion (ECF No. 135) is DENIED.

---

[1] Plaintiff's Motion for Award of Attorneys' Fees and Costs (ECF No. 123) is also pending in this case. The court will address that motion by separate order.

I.  **BACKGROUND**

The facts of this case are set forth in Under A Foot Plant, Co. v. Exterior Design, Inc., No. BPG-15-871, 2016 WL 4555021, at *1–2 (D. Md. Sept. 1, 2016) (ECF No. 65). In brief, plaintiff alleged that defendant copied plaintiff's photographic plant images from plaintiff's brochure and website, and used those images in its own marketing materials in violation of plaintiff's copyrights. (ECF No. 65 at 4.) On summary judgment, this court found that plaintiff owned a valid copyright in twenty-one of the twenty-four images alleged to have been infringed, and that defendant infringed twelve of the twenty-one images in which the court found that plaintiff owned a valid copyright. (Id. at 16.) Accordingly, the jury was asked to determine whether plaintiff owned valid copyrights and whether defendant infringed those copyrights in the remaining images for which the court did not make a determination. (See Tr. Vol. 4, ECF No. 122 at 15–16.) In addition, and of particular importance here, the jury was asked to determine the amount of actual and statutory damages to award plaintiff for defendant's infringements. (See id. at 16, 22–25.) On May 11, 2017, the jury returned a verdict awarding plaintiff $900,000 in actual damages and $300,000 in combined statutory damages[2] for defendant's infringement of all twenty-three[3] of plaintiff's copyrighted images. (ECF No. 111.) Plaintiff subsequently elected actual damages pursuant to 17 U.S.C. § 504(c)(1).[4] (ECF No. 113.)

---

[2] The jury awarded plaintiff $150,000 in statutory damages for each of the two registered works for which the jury found that defendant infringed plaintiff's valid copyright. See 17 U.S.C. § 412(2) ("[No award of statutory damages shall be made for] any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.").

[3] Plaintiff withdrew its claim with respect to the twenty-fourth image before the case was submitted to the jury. (See ECF No. 122 at 2.)

[4] "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . ." 17 U.S.C. § 504(c)(1).

Some discussion of the procedural machinations of this case in the months leading up to trial is relevant to the instant motion. On November 1, 2016, this court issued a scheduling order setting submission deadlines for motions in limine and the proposed pretrial order, and scheduling dates for the pretrial conference and jury trial. (ECF No. 70.) The court's order stated, in bold, that "all objections to evidence, other than objections based on relevance or prejudice/confusion/waste of time, are waived if not raised by the parties in their pretrial order." (Id. at 4.) Defendant initially failed to submit its pretrial materials to plaintiff in time to meet the deadline for joint submission, and the court extended the deadline by two weeks. (ECF No. 77.) Once submitted, it was apparent that the parties were at a significant impasse regarding the admissibility of exhibits, and that, in general, the parties had proposed an unwieldy number of exhibits which the court observed would not be conducive to an orderly presentation of issues to the jury. Accordingly, the court postponed the pretrial conference for one week to allow counsel to further confer with an eye towards reducing and streamlining the number of proposed exhibits, and fully addressing substantive evidentiary objections prior to trial. (See ECF No. 86.)

The bulk of the pretrial conference concerned plaintiff's challenges to defendant's purported experts;[5] defendant did not, at this time or prior to the conference, file a motion in limine or otherwise object to the qualifications of plaintiff's damages expert, Professor Jeffrey Sedlik, or the reliability of his expert report. (See ECF No. 89; Final Pretrial Order, ECF No. 96.) Nor did defendant file a motion in limine or otherwise raise any "best evidence" objections to plaintiff's exhibits under Federal Rules of Evidence 1002 and 1005.[6] At the court's

---

[5] Plaintiff filed the only formal motion in limine in this case—to strike defendant's rebuttal expert reports and disqualify defendant's rebuttal experts (ECF No. 80)—which the court granted in part and denied in part during the pretrial conference. (See ECF No. 89.)

[6] Defendant argues that the following footnote to the parties' draft pretrial order preserved its "best evidence" objections for trial (ECF No. 135-1 at 34):

3

instruction, the parties subsequently met and conferred to narrow the scope of exhibits to be offered at trial, and to resolve any remaining disputes.[7] (See ECF No. 89.) The resulting joint status report filed on May 3, 2017 indicated, for the first time, that defendant intended to raise "best evidence" objections to no less than forty-five of plaintiff's exhibits. (See ECF No. 95 at 2.)

Beginning on May 8, 2017, this court conducted a four-day jury trial. On the first day of trial, and well into the direct testimony of plaintiff's first witness, defendant objected to the introduction of copies of the two registered works—plaintiff's 2005 brochure and website (collectively, the "2005 Works")[8]—on the grounds that Rules 1002 and 1005 required certified deposits from the U.S. Copyright Office. (Tr. Vol. 1, ECF No. 119 at 73–76, 80–84.) In denying defendant's objections, the court specifically noted defendant's failure to adequately raise them in the pretrial order, and that all objections other than relevance were waived at that time. (Id. at 85–86.) Alternatively, the court found that, given the belated nature of defendant's objections, plaintiff had exercised reasonable diligence in requesting certified copies from the Copyright Office.[9] (Id. at 86–87.)

---

> Defendant objects to the introduction of Plaintiff's exhibits in total and will require the Plaintiff to establish ownership, authorship, legal procurement and possession and non-alteration of any photographs. The Defendant reserves the right to object to the introduction of any copyright application with [sic] providing the original photos in conjunction with the applications.

(ECF No. 79 at 4 n.1.) The substance of this boilerplate objection, which makes only an oblique reference to "original photos," was not discussed during the pretrial conference.

[7] On May 1, 2017, exactly one week before trial, defendant's recently-retained copyright counsel, Mr. Joshua A. Glikin, Esq., entered his appearance in this case. (See ECF No. 94.)

[8] Specifically, defendant objected to the introduction of exhibits depicting the front, inside left, inside right, and back cover of the 2005 "Good For Your Sole Brochure," as well as various snapshots of plaintiff's 2005 STEPABLES® website, as captured by the third party website, archives.org. (See ECF No. 119 at 73–74; J. Exh. List, ECF No. 107 at 1–2; ECF No. 135-1 at 36.)

[9] Under Rule 1005, if no certified copy of a public record can be obtained by "reasonable diligence," then the proponent may use other evidence to prove the content. Fed. R. Evid. 1005.

At the close of evidence, defendant orally moved for judgment as a matter of law on substantially the same grounds articulated in defendant's current motion, namely that: (1) Professor Sedlik's testimony was unreliable under Rule 702 and legally insufficient to sustain an award of actual damages; and (2) plaintiff had not produced any evidence of defendant's access to the registered brochure and website, thereby precluding an award of statutory damages. (See Tr. Vol. 3, ECF No. 121 at 157–230). The court initially observed that defendant's first argument was, in fact, an untimely Daubert motion presented in the form of a motion for judgment as a matter of law, and that the issues raised with respect to the reliability of Professor Sedlik's testimony would have been more appropriately and more expeditiously resolved prior to trial by way of a motion in limine.[10] (Id. at 227–28, 237.) Nevertheless, the court heard argument from both sides on the merits of defendant's motion, and denied it for the reasons stated on the record.[11] (Id. at 237–44.) After the jury returned a verdict in plaintiff's favor, defendant timely renewed its motion, which is now fully ripe for review.

## II.  STANDARD OF REVIEW

A party is entitled to judgment as a matter of law on an issue following a jury trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a)(1). The court may then decide the issue against the non-moving party and "grant a motion for judgment as a matter of law against the [non-moving] party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(B). If such

---

[10] As noted, defendant did not raise any issues with respect to the reliability of Professor Sedlik's report in the pretrial order, at the pretrial conference, or at any time prior to or during trial, until raised at the close of evidence.

[11] The court granted defendant's motion to the extent it sought to limit the availability of statutory damages to the two registered works at issue. (ECF No. 122 at 242.) This issue is not raised in defendant's renewed motion.

motion is made before the case is submitted to the jury but not granted by the court, it is subject to renewal no later than twenty-eight days after judgment is entered. Fed. R. Civ. P. 50(b). Upon renewing the motion, the movant may also bring a motion for a new trial under Rule 59. Id.

In order to grant a motion for judgment as a matter of law, "the district court must examine the evidence in the light most favorable to the non-moving party and determine 'whether a reasonable trier of fact could draw only one conclusion from the evidence.'" Brown v. CSX Transp., Inc., 18 F.3d 245, 248 (4th Cir. 1994) (citation omitted). If reasonable triers of fact could reach different results, the jury's verdict must be affirmed. Rhoads v. FDIC, 286 F. Supp. 2d 532, 538–39 (D. Md. 2003), aff'd 94 F. App'x 187 (4th Cir. 2004). More than a scintilla of evidence is needed in support of the non-movant's case—judgment as a matter of law should be granted only when the party opposing the motion "has failed to adduce substantial evidence in support of his claim." DeMaine v. Bank One, Akron, N.A., 904 F.2d 219, 220 (4th Cir. 1990).

Alternatively, a motion for a new trial should be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." McCollum v. McDaniel, 136 F. Supp. 2d 472, 475 (D. Md. 2001), aff'd 32 F. App'x 49 (4th Cir. 2002) (internal quotation marks omitted) (citation omitted). In deciding a Rule 59(a) motion, the court is permitted to "weigh the evidence and consider the credibility of witnesses." Id. A new trial should not be granted "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." Pathways

Psychosocial v. Town of Leonardtown, 223 F. Supp. 2d 699, 706 (D. Md. 2002) (internal quotation marks omitted) (citation omitted).

## III. DISCUSSION

### A. Actual Damages and Professor Sedlik's Expert Testimony

Defendant first argues that plaintiff failed to present legally sufficient evidence to support the jury's $900,000 actual damages award.[12] (ECF No. 135 at 1.) Specifically, defendant argues that Professor Sedlik's expert damages testimony was unreliable under Rule 702[13] because it: (1) ignored plaintiff's relevant, prior licensing history; (2) relied on non-comparable benchmark photographs to arrive at a base license fee; (3) failed to consider the "willing buyer" portion of the lost licensing fee standard; (4) failed to individually value each photograph; and (5) lacked a relevant and reliable method for arriving at the five-to-ten times competitive use multiplier. (Id. at 6–7.) At trial, the court concluded that defendant's arguments were properly directed to the weight of Professor Sedlik's testimony, not its reliability under Rule 702. (ECF No. 121 at 238.) Upon review of the parties' submissions, the court concludes that defendant's arguments must be rejected.

The crux of defendant's position is that Professor Sedlik misapplied the standard for evaluating actual damages based on lost licensing fees, as articulated in On Davis v. The Gap, Inc., 246 F. 3d 152 (2nd Cir. 2001), and adopted by the Fourth Circuit in Dash v. Mayweather, 731 F.3d 303 (4th Cir. 2013). Both cases, however, are factually and procedurally

---

[12] Defendant moves the court for judgment in its favor on the issue of actual damages, or in the alternative, for a new trial unless plaintiff accepts a remittitur of actual damages in "an amount that is supported by the evidence, which [defendant] submits is $4500." (ECF No. 135-1 at 15–16.)

[13] An expert witness may only offer opinion testimony if it is the product of reliable principles and methods reliably applied to the facts of the case. Fed. R. Evid. 702(c)–(d); see also Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593–94 (1993).

7

distinguishable,[14] and do not stand for the propositions for which defendant relies on them. For example, defendant argues that, under On Davis and Dash, prior licensing history is a "required benchmark" unless the plaintiff offers proof to justify the imposition of higher licensing fees. (ECF No. 135-1 at 11.) Although this is a colorable reading of the Fourth Circuit's view, neither case actually states that a plaintiff must rely on evidence of past licensing when it is available, or, more importantly, that the failure to do so renders an expert's opinion unreliable under Rule 702. Moreover, notwithstanding defendant's reliance on Second Circuit law, plaintiff <u>did</u> offer evidence to justify the imposition of a higher fee. Plaintiff's prior licensing history involved authorized sellers of its plant program, and, as Professor Sedlik explained, those fees would have accounted for the promotion and sale of plaintiff's own products through the program. (<u>See</u> Tr. Vol. 2, ECF No. 120 at 126–27, 131.) In this regard, Professor Sedlik's explanation is consistent with both On Davis and Dash, and the court concludes that a reasonable jury could credit his testimony.

In its Reply, defendant contends that plaintiff misrepresents the nature of its prior licensing agreements, which contained no royalty provisions and imposed only a modest purchase requirement. (ECF No. 146 at 8.) Defendant misses the point—whether or not the terms of plaintiff's prior agreements contemplated specific royalty payments or purchase requirements does not change the fundamental difference in bargaining positions between defendant and plaintiff's prior licensees. This difference—between a competitor and an authorized seller of plaintiff's own products—provides a sufficient basis for a reasonable jury to conclude that plaintiff's prior licensing history does not reflect the fair market value of its images.

---

[14] Both On Davis and Dash came to the court on summary judgment, and thus provide little guidance to this court in applying the standards under Rules 50 and 59.

A similar analysis also applies to defendant's other arguments. Nothing in <u>On Davis</u> or <u>Dash</u> imposes a particular licensing model on an amateur photographer, and Professor Sedlik supported his choice and application of a rights-managed model[15] with testimony that meets the threshold of reliability required by Rule 702. He explained in detail how a rights-managed model works, and why, in his opinion, it was the most appropriate license type given plaintiff's expressed desire to control the use of its images and the integrity of its brand. (ECF No. 120 at 109–11, 116–17, 148–49.) He went on to explain that rights-managed models are based on the contemplated use of the image, rather than solely on the quality of the image itself, which allowed him to extrapolate the fair market value of defendant's use of plaintiff's images from similar stock photographs. (<u>Id.</u> at 116–27.) The court cannot conclude that this testimony is unreliable as a matter of law, or that no reasonable jury could accept Professor Sedlik's conclusions.[16] Cf. <u>Ruiz-Troche v. Pepsi Cola</u>, 161 F.3d 77, 85 (1st Cir. 1998) ("<u>Daubert</u> neither requires nor empowers trial courts to determine which of several competing . . . theories has the best provenance."); <u>In re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 744 (3d Cir. 1994) ("[Proponents] do not have to demonstrate . . . that the assessments of their experts are <u>correct</u>, they only have to demonstrate . . . that their opinions are reliable.").

---

[15] According to Professor Sedlik, in a rights-managed model, "the licensor, which would be the photographer, describes in some detail the rights that the licensor is granting to the licensee, who is the customer. And those rights might have any number of requirements or permissions or conditions or limitations." (ECF No. 120 at 109.) This is in contrast to a royalty-free model, in which the licensee "pay[s] one fee in advance based on the size of the photographic file . . . [a]nd then [the licensee] can do almost anything with that photograph, with a few exceptions, for an unlimited time." (<u>Id.</u> at 110.)

[16] For this same reason, a reasonable jury could conclude that Professor Sedlik appropriately valued the images based on their aggregate use, rather than on their individual quality.

Similarly, defendant's arguments with respect to the "willing buyer-willing seller" standard[17] reflect, at most, the flaws inherent to that standard, not Professor Sedlik's misapplication of the standard. Indeed, the "common sense" to which defendant so ardently appeals does not factor into the test it advances. Dash instructs that "'[t]he question is not what the owner would have charged,' nor what the infringer might have been willing to pay. On Davis, 246 F.3d at 166. Rather, the objective inquiry focuses on the fair market value of the work as 'negotiat[ed] between a willing buyer and a willing seller' contemplating the use the infringer made." Dash, 731 F.3d at 313 (quoting On Davis, 246 F.3d at 172). Here, again, Professor Sedlik explained at great length that his licensing units were based on objective considerations of contemplated use, not on subjective assessments of value, which, he admitted, could vary widely. (See ECF No. 120 at 125–26, 160–66.) For that reason, he relied on the average pricing of three reputable stock photography agencies for the kinds of uses made by defendant, which is consistent with the sort of objective evidence of fair market value that courts have allowed in the past. See On Davis, 246 F.3d at 167 (noting that courts may determine fair market value of a license fee by looking to "established rates that are regularly paid by licensees"); Leonard v. Stemtech Health Scis., Inc., No. 08-067-LPS-CJB, 2013 WL 5311295, at *6 (D. Del. Sept. 23, 2013) ("[T]he Court cannot conclude that . . . [Professor Sedlik's] methodology—calculating Plaintiff's estimated actual damages in reliance on quotes from four stock photography agencies for various usages of similar images—is unreliable.");[18] Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 409 (S.D.N.Y. Sept. 16, 2004) ("The calculation of a

---

[17] Proof of actual damages in the form of lost licensing fees must be based on "what a willing buyer would have been reasonably required to pay to a willing seller for [the] plaintiffs' work." Dash, 731 F.3d at 313 (internal quotation marks omitted) (citation omitted).

[18] In Leonard, the court specifically addressed similar expert testimony from Professor Sedlik regarding actual damages based on lost licensing fees. See Leonard, 2013 WL 5311295, at *2.

10

reasonable license fee for use of a photograph may be based on such factors as the type of use, size of use, and circulation. [Also relevant is] the type of media in which the Photograph is reproduced . . . .").

Finally, with respect to the competitive use multiplier, defendant points to Professor Sedlik's own admission that he had no explicit method for determining a single value that would account for defendant's competitive relationship to plaintiff. (ECF No. 135-1 at 26 (citing ECF No. 120 at 159).) But this statement, in context, does not on its own render Professor Sedlik's testimony unreliable under Rule 702. First, Professor Sedlik specifically provided a range of values to compensate for the inherent imprecision of any single number. (See ECF No. 120 at 159.) Second, he explained that, based on his experience in the marketplace and his position as the president of a standards body, five-to-ten times was a reasonable estimate of what a willing seller could reasonably require of a willing buyer to compensate for the buyer's competitive use. (Id. at 128–29.) Rule 702 permits an expert to draw conclusions based primarily on experience, and the court concludes that Professor Sedlik's testimony is sufficiently reliable in this regard to support the jury's verdict.[19] See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")

In sum, defendant has failed to establish that no reasonable jury could rely on Professor Sedlik's methodology in awarding actual damages based on lost licensing fees. Indeed, the jury

---

[19] Defendant further argues that Professor Sedlik contradicted his own methodology by factoring in defendant's competitive use when he chose to ignore plaintiff's prior licensing history in favor of stock photography pricing, despite testifying that his base license fees were determined without consideration of whether the parties were competitors. (ECF No. 146 at 9.) The court is not persuaded by this argument for two reasons. First, the jury's actual damages award was less than a third of what plaintiff requested, reflecting the jury's exercise of discretion in weighing the expert's opinion. Second, a reasonable jury could conclude that defendant's competitor status would be relevant both to determining an appropriate base license fee—in this case an average of three stock photography agencies—and to determining the outcome of a hypothetical negotiation based on that fee—in this case an additional five-to-ten times premium for competitive use.

heard defendant's arguments and observed counsel's cross-examination of Professor Sedlik on his methodology, including his reasons for disregarding plaintiff's prior licensing history, his choice of a rights-managed licensing model, his understanding and application of the "willing buyer-willing seller" standard, his valuation of the images, and his application of a competitive use multiplier. Defendant failed to present any rebuttal expert testimony of its own, instead choosing to raise, for the first time, a <u>Daubert</u> challenge (on a Rule 50 motion) to Professor Sedlik's testimony without ever having deposed him, and despite having received his expert report nearly five months prior to trial. At the conclusion of trial, and after hearing all the evidence in the case, the jury unanimously decided to credit Professor Sedlik's testimony, but exercised its discretion in reducing the amount of damages advanced by Professor Sedlik. Based on the record before it, and for the reasons articulated above, this court cannot conclude that the standards for granting defendant's motion for judgment as a matter of law or for a new trial have been met, and accordingly, Defendant's Motion is denied.

## B. **Statutory Damages and Infringement of the 2005 Works**

Defendant also challenges the jury's award of statutory damages, based on its finding of infringement of the registered 2005 Works, on the grounds that plaintiff failed to put forth any evidence of defendant's access to the registered works. (ECF No. 135-1 at 27–33.) A plaintiff may prove the second element of its infringement claim—defendant's copying—either through direct or circumstantial evidence. <u>Thomas v. Artino</u>, 723 F. Supp. 2d 822, 830–31 (D. Md. 2010). "Where direct evidence of copying is lacking, plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work." <u>Bouchat v.</u>

Baltimore Ravens, Inc., 241 F.3d 350, 353–54 (4th Cir. 2001). While defendant essentially concedes to using images that <u>appear</u> in the 2005 website and brochure, defendant argues that plaintiff failed to adduce sufficient evidence that defendant copied those images <u>from</u> the website and brochure, as opposed to some other source. (ECF No. 135-1 at 33; ECF No. 146 at 18.)

Upon review of the record, the court concludes that there is sufficient circumstantial evidence of defendant's access to the 2005 Works to support the jury's finding of infringement. Notably, plaintiff's president, Francis White, testified that defendant used several of plaintiff's STEPABLES® taglines on its own marketing materials, and that those taglines were displayed on the 2005 website and brochure.[20] (ECF No. 119 at 35–37, 64–67, 95–101; ECF No. 120 at 20–21, 23–24; Pl. Exh. 11b.) Based on the apparent uniqueness of the taglines and their absence from the individual images at issue, a reasonable jury could infer that defendant copied both the taglines and the images from the same source; that is, plaintiff's website and brochure. Accordingly, Defendant's Motion is denied with respect to the jury's finding of infringement of the 2005 Works.

### C. <u>Defendant's "Best Evidence" Objections to the 2005 Works</u>

Last, defendant argues that the court erred when it denied as untimely defendant's objections, pursuant to Federal Rules of Evidence 1002 and 1005, to plaintiff's introduction of uncertified, non-original documents to prove the content of the 2005 Works.[21] (ECF No. 135-1 at 33–37.) Specifically, defendant argues that it preserved its objection by indicating in a footnote to the draft pretrial order that it "reserves the right to object to the introduction of any

---

[20] These taglines include the trademarked phrase "Pick the Right Plant for the Right Spot," among others. (ECF No. 119 at 36–37, 65; ECF No. 120 at 20–21, 24.)

[21] These documents include photocopies of the 2005 brochure and printouts of the website from a third party web archiving service, archives.org. (<u>See</u> ECF No. 107 at 1–2; Pl. Exhs. 11, 12.)

copyright application with [sic] providing the original photos in conjunction with the applications." (Id. at 34 (quoting ECF No. 79 at 4 n.1).) Defendant further argues that plaintiff was on notice of defendant's objection since at least plaintiff's opposition to defendant's motion to dismiss,[22] and thus the court also erred when it ruled, in the alternative, that plaintiff had exercised reasonable diligence in obtaining certified copies of the 2005 Works. (Id. at 34–35.)

The court has considered the arguments of counsel and concludes that defendant's objections were properly denied. The court rejects defendant's contention that it preserved its best evidence objections to the 2005 Works by ambiguously objecting, in a footnote to the draft pretrial order, to the introduction of "any copyright application"—even though defendant failed to raise this issue during the pretrial conference, or indeed, at any time prior to trial, and despite having been well on notice of plaintiff's intent to offer the 2005 Works into evidence. Moreover, even if plaintiff had been on notice of defendant's demand for certified copies of the registered works, this would not have relieved defendant of its obligation to raise its objections <u>with the court</u> in a timely and sufficiently particularized manner to allow the parties and the court to effectively address them prior to trial. Indeed, as the court noted at trial, defendant's failure to properly raise its objections frustrated plaintiff's ability to fairly respond to and correct the objections,[23] as well as the court's ability to fully consider the issues.[24] (See ECF No. 119 at 92–94; ECF No. 121 at 227–28.)

---

[22] The court is not persuaded by this argument—an assertion made in a motion to dismiss more than a year before the trial does not put a party on notice of a trial evidence objection.

[23] According to plaintiff's counsel, plaintiff first became aware of defendant's objections less than one week before trial, at which point, plaintiff's counsel attempted to obtain copies of the original deposits from the Copyright Office. (See ECF No. 119 at 78.) The record shows that defendant first indicated intent to raise "best evidence" objections to copies of the 2005 Works <u>specifically</u>, in the parties' May 3, 2017 status report, less than one week before trial. (See ECF No. 95 at 2.) The court concludes, as it did at trial, that plaintiff exercised reasonable diligence by promptly requesting certified copies from the Copyright Office after defendant expressed its specific intent to object to those exhibits. See Fed. R. Evid. 1005.

Further, the court finds that the record contains sufficient independent evidence of the content of the 2005 Works to sustain the jury's verdict. Ms. White testified extensively as to the contents of both registered works, including which of the twenty-four photographs at issue appeared in the 2005 brochure and website, and defendant had ample opportunity to cross-examine her on these matters. (See, e.g., ECF No. 119 at 95–97, 100–07.) Moreover, because a copyright registration is prima facie evidence of validity, the defendant bears the initial burden of showing that the copy of the allegedly infringed work deposited with the Copyright Office differs from the copy offered into evidence to prove infringement. See United States v. Shabazz, 724 F.2d 1536, 1539–40 (11th Cir. 1984) (rejecting authentication challenge to registered music recordings based on lack of evidence of alteration); F. W. Woolworth Co. v. Contemporary Arts, Inc., 193 F.2d 162, 165 (1st Cir. 1951) (requiring proof of fraud to rebut prima facie evidence, based on corroborated testimony, of accuracy of proffered sample of registered work), aff'd 344 U.S. 228 (1952); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.09[B] (Matthew Bender, Rev. Ed.). Here, defendant has neither challenged the validity of the copyright certificates issued for the 2005 Works, nor offered any evidence that the proffered duplicates of the brochure and website differ from the Copyright Office deposits. Accordingly, defendant's argument is rejected.

---

[24] Defense counsel offered at trial to brief the court on its evidentiary objections with a bench memorandum "whip[ped] . . . up this weekend." (ECF No. 119 at 75.) The pretrial scheduling order, however, clearly contemplates that the court is to have the benefit of full briefing on substantive evidentiary issues prior to trial, and that all objections other than relevance are waived if not raised in the pretrial order. (See ECF No. 70.)

## IV.	CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 135) is DENIED.


Date: August 18, 2017                     _____/ s /_____
                                          Beth P. Gesner
                                          United States Magistrate Judge